which conference case please. Approach please. Counsel's approach. Could you state your names for your record please? Yes, my name is Maneva I on behalf of Raymond Brown for the Office of the State Appellate Defender. Okay. Brian Hodes, I'm from the State's Attorney's Office on behalf of the people of the state of Illinois. Okay. If you want to, you can adjust that microphone because it doesn't amplify but it's for recording purposes and we want to make sure that everybody hears what you have to say. So 15 minutes a piece and time for rebuttal. Three minutes for rebuttal. Okay. You may proceed. Thank you. Good morning, Counsel. Good morning, Your Honors. Morning. May it please the Court. We are here filing a Supreme Court remand. Today I will be focusing on the underlying fitness crime but I'd be happy to answer questions on the unreasonable assistance one as well. The post-conviction petition below, fully supported by affidavits and medical documentation, made a substantial showing that trial counsel was ineffective for failing to raise an issue of Mr. Brown's fitness. Counsel knew of facts which gave rise to a bonafide doubt of Brown's fitness due to mental illness, the use of psychotropic medications, prior suicide attempts, and indeed the offense itself. The State does not dispute deficient performance but focuses instead on prejudice, arguing that the trial record positively rebutted Mr. Brown's fitness allegations. Well, on the issue of the deficient representation, there's reference throughout the record that counsel went in and talked to Mr. Brown but it appears that it's for a short period of time. Do we know how much time counsel actually spent with Mr. Brown prior to trial? No, we don't. That's just the kind of thing that could be explored at an evidentiary hearing. We have indications, unrebutted allegations, I might add, because it's important to note that the State filed a motion to dismiss, thereby accepting the allegations and not an answer. We don't have an indication but according to Mr. Brown's unrebutted allegations, he knew prior to trial that Mr. Brown was taking three separate psychotropic medications, knew of his diagnosis of bipolar disorder, depression, knew of the suicide attempts, and that comes from the affidavits of both Mr. Brown's mother and aunt, who were there but they informed him prior to trial of those prior suicide attempts. Indeed, the offense itself was a suicide by cop mission, if you will, should have given that away. We also... Was counsel aware of what, if any, effect these medications might have had on Mr. Brown's condition? That's not entirely clear. Again, something that would have to be explored at the evidentiary hearing. We do know that Mr. Brown, and very specifically, that those medications caused lethargy and difficulty comprehending the trial proceedings. And in fact, the State does not dispute that those are side effects of those medications, those psychotropic medications, which Mr. Brown was taking. And in fact, the sentence in hearing itself, upon which the State relies in claiming that the claim is positively rebutted by the record, which I might add, the Supreme Court has already refuted and found that the claims in the petition are not rebutted. But even as we look to the sentencing hearing, we find some confusion in Mr. Brown. He goes on and on with the meandering pre-written statement. He talks about a wide range of subjects, but his confusion is evident. He mentions a three-year plea offer. This is an attempt murder police officer offense. Defense counsel said there was no three-year plea offer. He indicates his belief that the sentencing range is 1 to 20. In point of fact, sentencing range is 20 to 80. And he goes on and on about this being that he having no intent to commit the offense of murder, but wanting to kill himself. He refers to statements he made to an unclear doctor or a police officer or a nurse at the time after the offense. What is unclear, he doesn't seem to understand that only he could have presented this stuff. He complains that his trial attorney did not bring this up when, in fact, this could only have been brought out through his testimony. So we see confusion evident in that as well. But again, referring back to the unrebutted allegations, there's indications, there's also medical documentation from 2001, indicating that due to his medical condition, he experienced hallucinations, impaired judgment, delusions, acute psychosis. And as I said, the state does not dispute the foregoing. It doesn't even dispute that trial counsel would have been deficient with them to bring this issue to the forefront. Well, the state does rely on. Are they going to agree with you when they stand up here that they're not challenging that first prong? I don't see that they are challenging that first prong. And I'm willing to listen to their arguments, but certainly from my reading of the brief, they did not. What the principal argument is, is that the trial, relying on the trial record and the dissenting opinion, that Mr. Brown's claims are positively rebutted by the record. Not only did the state, did the Illinois Supreme Court refute that finding, concluding that the claims were not rebutted, the state produced nothing new at the hearing of a motion to dismiss to call into question that finding. It is now extremely persuasive authority from the Illinois Supreme Court as to, but it's not positively rebutted by the record. We have nothing new from the state, and there's good reason. Speaking of that, that brings me to a question that I have. In the end, there's nothing new from the front side as well. After prolonged proceedings and some additional pleadings filed by the petitioner, in the end we're back to the original state petitioner, correct? Correct, we are. But the Post-Conviction Hearing Act actually contemplates that that may be the case. After all, post-conviction counsel is required to amend a petition only where the petition and the pleadings and the documentation, which the court can rely on completely, don't support the claims. So there's no requirement on Mr. Brown that he plead additional documentation or file an amended petition. But to the extent that the court finds that there is some deficiency, we've always also raised that and raised it in assistance of post-conviction counsel claim. Can you tell me exactly what your insufficiency claim is for trial counsel? It seems to have several descriptions. Is it a failure to investigate the defendant's medical history? Is it a failure to request a BCX? Is it a failure to request a fitness hearing? Is it all of the above? Do we need to consider if all of them are the case? I'm a little confused as to exactly what the claim is. It's a multi-pronged one, as you alluded to. Certainly, we're alleging that to the extent that the court finds that there needed to be a fitness evaluation, she could have requested a fitness evaluation. That is something which is done at the post-conviction stage. The state doesn't claim otherwise. Retrospective fitness evaluations certainly are done. There's also indication that the 651C certificate no longer carries a presumption of accuracy, as she refers specifically to guilty plea proceedings when there were none in fact. I'm meaning about trial counsel. No, I'm talking about 651. Maybe I misunderstood. I don't know what your claim of exactly what the ineffectiveness of trial counsel is. It's a failure to bring his fitness to the court's attention to request a fitness evaluation. Perhaps we're alleging that there was evidence on this record to raise a bona fide dot as to Mr. Brown's fitness. It would be incumbent on trial counsel, therefore, then to request a fitness hearing. Well, is there an element of failure to investigate that? Yes, yes. It's a failure to bring, to write his fitness, to investigate. It's an all-encompassing claim. I'm sorry, I misunderstood your question. Yeah, I'm sorry. I didn't articulate it correctly. No, no. What is the standard for the failure to investigate? Because it's, are we still looking at some kind of, how do we look at the failure to investigate? Well, we look at, under Strickland, we look at the failure to investigate. We here are at the second stage of pleadings. It's also a de novo review of trial counsel's obligations. I think the state does not dispute that trial counsel has an obligation, once he's apprised the facts, which would give rise to a bona fide dot of the client's fitness, to investigate that further. Through requesting a fitness evaluation of the defendant, moving on to a fitness hearing, if the results of the fitness evaluation prove that there's a question as to the fitness. And on this record, on this petition, it is Mr. Brown's position that there are certainly enough on this record. We have the use of psychotropic medications, the use of psychotropic medications that cause lethargy and difficulty comprehending the trial proceedings, more importantly. And, in fact, that's supported by the medical documentation, the prescription forms which are appended to his document, which indicate that, in fact, the medication list and doses decreased over time from the pretrial hearings, when he was on larger doses, all the way to the July 2003 sentencing hearing, when he was then just on Seroquel at a lower dose. All right, but I have a question. All right, so putting all that aside, in terms of maybe the counsel didn't investigate this, the court itself made an inquiry into this, in fact, that there was no need for a fitness evaluation of the defendant. Correct, the trial court didn't make that. So even if counsel didn't investigate all this, as you allege, right, the court itself still took the matter under hand to conduct an assessment, and the trial court said that it wasn't necessary. Trial court did not have all the information which is appended to the post-conviction petition. At the time of making that inquiry, it was a very cursory discussion. Well, in your briefs, you mentioned that the defendant wasn't able to understand some of the questions, was not able to think for himself, and was not able to properly respond to the questions. So if those facts are evident and the court does an examination, it's in the court's discretion to determine whether or not also to grant an examination if one was needed. Here the court obviously observed the defendant during the trial and made a determination that a fitness examination wasn't necessary. The trial court, as I said, the trial court did not have the full panel of information. We did not know that the defendant was having difficulty comprehending things. But I think the important thing is that we only had very brief exchanges between the defendant and the trial court during the trial proceedings. And even if we look at sentencing, reading a pre-written statement that someone else could have had to prepare and at a time when there was less medication. But certainly the trial court, and in fact not only our Illinois courts, but the U.S. Supreme Court in Peyton v. Robinson, the Seventh Circuit in Burt v. Uchtman, and in fact our Illinois Supreme Court have all recognized that those brief exchanges do not, and in fact our Illinois Supreme Court in remanding this case, those brief exchanges do not rebut the claims of the trial court, even the trial court's finding that he didn't see a bona fide doubt of fitness. As there are many nuances to mental illness, fitness claims, that the trial court simply didn't have before it at the time of the sentencing hearing in evaluating. Following up on Justice Rockford's question, what's the standard here in terms of the claim of ineffectiveness of counsel? The claim of counsel here would be whether he made a substantial showing to noble review that trial counsel was ineffective in failing to request or to investigate his fitness, to raise his fitness to trial. Because if we take the allegations, the unrebutted allegations as true, which we must at this second stage hearing, they give rise to a bona fide doubt of Brown's fitness due to mental illness, use of psychotropic medications, the lethargy, the prior suicide attempts, the crime itself. There's a panoply of information, a wealth of information attached to Mr. Brown's original petition, which would support a substantial showing. The kinds of questions that Your Honors raise today can only be really fully litigated at an evidentiary hearing. And I think relying on just the brief exchanges that we have, as our Illinois Supreme Court found, cannot dispense with these claims. They were not positively rebutted by the record, as the Illinois Supreme Court found. And then on remand for the second stage proceedings, the state simply presented nothing new to call into question that very persuasive decision that we have from the Illinois Supreme Court right now. The time for these issues to be resolved will be at an evidentiary hearing, where Mr. Brown's fitness can fully and finally be resolved, trial counsel's knowledge of that information. But certainly at this stage, the unrebutted allegations taken as true, which we must at the pleading stage, merit an evidentiary hearing for further consideration. So if there are no further questions, Your Honors. Thank you. Thank you. Do you have anything else to add? Quite a bit, I think. Okay. And probably some to subtract as well. I may please the Court Assistant State's Attorney, Brian Hodes, on behalf of the people of the state of Illinois. In this case, the circuit court properly dismissed the defendant's post-conviction petition of the second stage, obviously, and a motion to dismiss, because it failed to make a substantial showing of ineffective assistance of trial counsel for failing to request a fitness hearing. Specifically, we focused on the defendant's failure to show strength in prejudice, failing to show that the trial court would have found defendant unfit had a fitness hearing been held. That, by the way, is the standard of review for prejudice under the Illinois Supreme Court's ruling in Mitchell. So is it true, then, that you're not challenging the first prong and the deficiency of counsel's freedom? No, I would argue it. I just think that the prejudice is stronger for you. It's stronger. And the U.S. Supreme Court in Strickland itself said that the object of an effective assistance claim isn't to grade the performance of attorneys. It's to dispose of these claims in an expeditious manner. And for that reason, the Strickland court, and this has been followed by the Illinois courts, of course, has said that when you can dispose of things based on prejudice, that's the way to go. And I think that's the way to go here. So let's go. Exactly. Thank you, Your Honor. I guess because the Supreme Court's ruling is so much of what's going on here, I need to discuss that. What exactly it meant. What did the remand mean? Did the remand mean that the defendant had automatically, based on what the majority justices said, the four justices said, did they tacitly say, I mean, I know there's actually so much here, but we're only remanding it for second-stage proceedings to let the defendant gather more ammunition because he's really already cleared the second stage. That's not what they said. The second stage, if you read the whole decision, especially the majority's part, really, they are talking all about how well the standard is for the first stage, how well the arguable claim standard is, how a petition to survive a first stage where a defendant is pro se under almost all situations merely can only be dismissed if it is frivolous and patently without merit. And the majority justices, the four majority justices, found that in that case, the petition was not frivolous and patently without merit. It was a wrong three-justice minority opinion that felt that it was. And in discussing the minority opinion, what the four majority justices said was not that they were wrong, but that they were premature. They didn't say that the Supreme Court cases that the minority applied were inapplicable or inapposite. They said that they were premature mostly. They said in two words, not now. Did they say that now? That's when, thank you. That's when I think now is yet. In other words, they said not yet, and here we are. Those cases, Mitchell, Easley, the others, they're all part of full force. All those Supreme Court cases that found that the defendant failed to show, and in most of those cases, strictly prejudice based on similar claims, the bail lawyers failed to seek witness hearings apply with full force to this case. And the minority opinion, the one that remanded it, basically said those cases would apply if we were at the second stage. And they said that in discussing the facts, Douglas Case, the minority opinion, the majority opinion, excuse me, the majority, the whole of the court, specifically reminded that we're not making any decision that would want to preempt what happens next. We're not saying that this is a ruling as to the second stage. What they were sort of doing, though, is they were directing, by the way in which they dealt with their much longer minority opinion, was they were saying that those things are going to apply because they didn't say that the minority was wrong. They just said they were premature. And all those Supreme Court cases, in those cases, apply with full force now, and I'd like to briefly at least get into why. Okay, the basic standard to prove that to meet a burden of, say, substantially showing, which I must emphasize is the defendant's burden, and it's a much higher burden than an arguable claim or a claim that is simply just not frivolous and not patented without merit, is to make a substantial showing based on pleading facts, not just conclusive allegations. It is governed essentially by cases, a case called Pippa v. Edmonds, which is derived from a Supreme Court, a U.S. Supreme Court decision earlier called Drug Free Missouri, which identified certain factors that courts ought to consider in determining whether or not someone is in fact fit for trial. Edmonds noted that defendants are presumed to be fit for trial and that defendants bear the burden of proving that there is a bona fide data as to their fitness. They explained that courts should use their discretion in determining whether fitness exists, and they identified these three factors. The three factors are the defendant's irrational behavior and misdemeanor at trial, any prior medical opinions as to the defendant's competence, not sanity, competence, because what they're concerned about is whether someone is able to be fit at trial, and fitness has to do with how well they would work with their lawyer and whether they would understand what was going on. And finally, any representations by defense counsel with respect to the defendant's competence at trial. That's from Edmonds, and it cites drug, the U.S. Supreme Court decisions. Well, here we have an issue where they're saying that counsel was not competent in terms of communicating the information to the court regarding the medication. We also have an issue here where they say that I don't think they're really getting into the issue of sanity, but what they're saying is the defendant didn't understand what was going on, was not able to properly answer questions. So, I mean, I think two out of the three in terms of Edmonds, there's some argument here with regards to the issue of the medication and how it affected the defendant here. I would submit that those are conclusive allegations. They may have been sufficient at the first stage, but they're not sufficient at the second stage. Certainly with respect to what counsel, even if counsel knew that the defendant was taking these psychotropic drugs, that's still not the same as saying that the defendant was incompetent. The measure of competence is not you can be competent while taking all kinds of psychotropic drugs. That's what the U.S. Supreme Court and now the all-American courts have steadfastly found. So even if we're going to assume that counsel really did notice, that wouldn't be ample to get you on that one. The other one, I'm sorry, was the only one of the three problems I think that they can even touch on under Edmonds is the use of drugs. They've got some objective proof of that. What they don't have is proof that that actually affected the defendant because the trial record provides no evidence that would provide a substantial showing that the defendant was in any way impaired in his ability to understand what was going on or to work with counsel. In fact, counsel said otherwise. And just calling counsel a liar when counsel can't respond in affidavits isn't good enough. Also, by the way, they don't say counsel was a liar with respect to defendants ability to cooperate. They just say counsel was a liar with respect to the drugs, knowing about the drugs, and knowing about a previous suicide attempt and things like that, which isn't exactly the same thing. Also, and perhaps most importantly, we have the actual trial record, which is something we can't put our way around. The trial record doesn't just show a bunch of yes and no things. And, by the way, those yes and no things, when a judge accepts someone's representation that they've decided not to testify, when a judge accepts someone's representation that they want to have a bench trial out in the jury, are not generally considered mere yes and no things. The judge is supposed to be engaged in that matter and recognize that the defendant has done this voluntarily. So just writing that off as a yes and no wasn't good enough. Also, there was more than that. When the judge spoke to the defendant in this case, he also asked the defendant, asked that the defendant, the defense decided they weren't going to present any evidence, in addition to the fact the defendant wasn't going to testify. And the defendant volunteered at that point.  He identified a specific witness who had testified against him and lamented the fact that she had essentially flipped on him. And he noted to the judge that he had letters from her. This shows, I think, a significant engagement with the trial. And I think it would firmly support any idea that he was, for the low standard required, fit to stand trial and understood what was going on. So you've got that. You've got the judge's finding at the end of trial. When this issue was directly in front of him, did I see anything now that I know about these drugs that made me think that this defendant, you've got an experienced judge who's finished a bench trial with this person, who's just listened to this long letter through the defendant route, which counsel claims is actually evidence of how he was unfit. But obviously the judge had just heard it. And the judge is in a position far privileged to ours because he's physically there. The U.S. Supreme Court in Hanson noted the problems of a cold lesson versus absolutely being there for purposes of fitness examinations or fitness second guessing. And that judge found that he had no doubts as to the fitness. So you've got those things all meditating under the multi-factor analysis in favor of defendant's fitness. I guess I've gone on a little longer than I meant to on that. For that reason, I guess what I'd like to do is to briefly just point out that in the other cases, the Supreme Court cases, the defendants actually marshaled much stronger, more and better, you could say, evidence of their unfitness than the defendant has here. And they didn't meet the prejudice threshold. A lot of them had expert testimony suggesting that they were unfit for trial. Some of it was literally written that way. I find the defendant in X case has an IQ of 80 and that he was taking drugs and that therefore he would not have been fit for trial, and where the defendant was acting out during trial. And in those cases, they still found that that was insufficient based on the record. Defendant doesn't have anywhere near that kind of strong evidence in those Supreme Court cases. Those were the cases that were referred to by the minority, as I mentioned before. So for those reasons, I would suggest that this Court should affirm this dismissal on merits. I do want to briefly get into the issue with the 651C slash unreasonable assistance argument. There's only one flaw, and that's that Counsel apparently messed up and put down that it was a guilty plea rather than a trial in her 651C. I think that that's explainable as a sort of error that occurs when one adapts a document from one template to another. In any event, the record affirmatively shows that she knew that it was a trial, not a guilty plea. Many of the pleadings she filed on the almighty Supreme Court when she was trying to get these records to help defendant in this case, and she was ultimately unsuccessful. But she was trying to get records with respect to defendant's trial counsel that were HIPAA protected, so she filed pleadings in the almighty Supreme Court. It shows that she knew it was a jury trial. Otherwise, there's absolutely nothing that would cast any doubt over her 651C, and the standard of proof we want is actually a substantial showing that she complied with her duties under that. What about this issue about the failure to investigate and then provide the Court with adequate information so this way the trial court could at least make a determination based on all the facts presented to it? The case law matters that there's no evidence that she didn't do that, and the assumption based on the 651C and based on existing case law, I think Wallace was the case that I mentioned in our brief, is that just because we don't see it in there doesn't mean counsel didn't do it. It looks like early on the defense's initial post-conviction counsel may have actually tried to get a report done, but we wouldn't have a report unless the defense had decided to submit it on behalf of the defendant. And either he didn't submit it, either he obtained a report and got that bad news and, of course, didn't want to put it in the record because it would only dam defendants' case, or decided not to do it. Either way, that wouldn't be a basis for a claim because counsel has no affirmative duty for a lawyer to do this, and, of course, lawyers have no duty to do this, certainly not under the reasonable assistance standard, which is actually lower than the stripping standard. So with that, and I apologize for rambling, I would like to simply ask that this court please affirm the circuit court's ruling granting our motion to dismiss defendant's petition. Thank you. Thank you. Bo? Just a few points. First of all, beginning for us with the stripping standard, the state states the Mitchell standard would have had him found unfit. That is incorrect. That Mitchell standard applied to claims under the old statute where a defendant was entitled to a fitness hearing just by indicating that he was on medication. I refer to the minority opinion, which the state relies on heavily. They themselves even cited the Easley standard, which says that defendant to prove strickland prejudice must allege facts that existed at the time of trial that if known to the trial court would have caused the court to have a bona fide doubt of his ability to understand the nature and purpose of the proceedings and to assist his defense. The Easley standard controls. The state goes then on to my next point, that there is a low standard, that the Illinois Supreme Court was dealing with a much lower standard. That may be true, but the state produced nothing at the evidentiary hearing to call into question the Supreme Court's determination that the trial record does not positively rebut his claims. Nor are Mr. Brown's allegations as conclusive as the state would have you believe. In point of fact, even if we look at sentencing, we do not have the kind of, we do not see any coherence. As an initial matter, the state relies on the sentencing quite a bit, but it doesn't address my deeper point, which is that the sentencing hearing happened a month after the trial proceedings and a month after his medications were significantly altered. The Illinois Supreme Court made that determination. That determination is still good law. And at the sentencing hearing, he indicates confusion about the guilty plea, about the sentencing range, and about his right to testify. We simply cannot say on this record that his claims are positively rebutted by the record or that they're conclusive. They are fully supported by the record. But do they make a substantial showing? You say that the state hasn't produced anything, but you're at a different stage, well recognized by the Supreme Court when they sent the case back. And it's your burden to make a substantial showing. And so the state has argued here that the substantial showing has not been made based on the cases where there has been more evidence produced, and still the defendant has not succeeded. I would contest that, and I'd like to speak to Mitchell and Easley in a moment. Absolutely, he's made a substantial showing. The post-conviction hearing act does not contemplate that an amended petition is not needed. In this case – I'm not asking you that. I'm asking you, have you? Can we look at the petition and say, has there been a substantial showing? Absolutely. I stand by the position that I said in my opening briefs, in my reply briefs, and in argument today. If we look at Mitchell and Easley, which the state cites so strongly, the kind of discourse between the trial court and the defendants in this case were of a vastly different blend than in this case. In Mitchell, the defendant testified. His testimony spanned 50 transcript pages. In Easley, the defendant had a lengthy discussion with the trial court about not wanting to remain in the trial proceedings and wanting to hear them. The kind of engagement between the trial court and the defendant in those cases is simply not comparable to the very brief exchanges we had at trial here. And again, I would remind the court that the sentencing hearing happens a month later when he is no longer on the same type of medications. So it's actually the evidence in this case would support a finding of a substantial showing. Going on to Edmonds, the state has to remember that trial conduct is just but one factor. It reads, and it's interesting that the state goes on about throat bleed Missouri, because in that case, and I quote from Drake, the courts have recognized that there are no fixed or immutable signs which invariably indicate need for further inquiry to determine fitness to proceed. That is just one factor. And as I said, the earlier Supreme Court has already rejected the notion that bronze clay is solely based on the use of psychotropic medications. That is in the majority's opinion. It is not based solely on psychotropic medications, but in fact based upon his allegations of lethargy, psychotropic medications, mental illness, suicide attempts, and trial counsel's knowledge of this. Just briefly on the 651C since the state touched upon it, there is more than just the guilty, the allegation relating to the guilty proceedings. Not only, first of all, there's a flaw in the 651C certificate. So no longer does it carry the rebuttable presumption that a 651C certificate normally carries in this case. It is patently obvious that there weren't guilty proceedings, so that is not true. But as I said, that's not the only flaw. She also referred in the reply to the state's motion to dismiss to the Hodges prejudice standard. The Hodges is a first-stage post-conviction case. We're on second-stage proceedings. She didn't even cite the wrong standard. If this court were to hold that trial counsel has an obligation to be at the hearing but not know the proper standard, then the Post-Conviction Hearing Act is an empty formality. And the state cites Wallace. But in that case, the court was dealing with post-conviction counsel's amendment of a timeliness issue. It did not deal with the issue here, which is whether post-conviction counsel has an obligation to request a BCS evaluation. There's no evidence in this record that she asked for a BCS evaluation of the defendant. There's nothing in here. Rodriguez controls. Rodriguez is a case which the state did not discuss but just cited in their briefs. And finally, I'll just refer back to my reply brief in distinguishing all of the cases that the state cites with regards to the second-stage inquiry. Thank you. We want to thank both counsels on a well-argued matter and an interesting case. This court will take it under advisement. As I mentioned earlier, our colleague Justice Hall will be listening to the tapes and joining us in the decision. So we'll take a short moment for counsels on the next case to set up and then we'll call the next case.